IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CITY OF FALLS CHURCH, VIRGINIA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ERIC H. HOLDER, *et al.*, )<br>)<br>Defendants. )<br>) | Civil No. 1:13-CV-00201<br>(ABJ-DBS-RJL)<br>Three-Judge Court |

<u>CONSENT JUDGMENT AND DECREE</u>

1.   Plaintiff City of Falls Church ("Falls Church") initiated this action against Defendants Eric Holder, Attorney General of the United States, and Thomas E. Perez, Assistant Attorney General, Civil Rights Division (collectively, "the Attorney General") on February 15, 2013.

2.   Falls Church is a political subdivision and independent city organized under the constitution and laws of the Commonwealth of Virginia. Falls Church is subject to the special provisions of the Voting Rights Act, including the preclearance requirements of Section 5 of the Act, 42 U.S.C. 1973c.

3.   Falls Church became covered by the special provisions of the Voting Rights Act based on coverage determinations under Section 4(b) of the Act, 42 U.S.C. § 1973b(b), made by the Attorney General and the Director of the Census, that were published in the Federal Register. *See* 30 Fed. Reg. 9897 (Aug. 7, 1965). The Attorney General determined that the

Commonwealth of Virginia maintained a "test or device" as of November 1, 1964 and the Director of the Census determined that less than 50 percent of the persons of voting age residing therein voted in the presidential election of November 1964.  *Id*.  By virtue of this coverage determination, the City of Falls Church, which is within the boundaries of the Commonwealth of Virginia, must receive preclearance under Section 5 of the Voting Rights Act for all changes affecting voting enacted or implemented after November 1, 1964.

4.     In this action, Falls Church seeks a declaratory judgment pursuant to Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), exempting it from coverage under Section 4(b) of the Act, 42 U.S.C. § 1973b(b).  Exemption under Section 4(b) would in turn exempt Falls Church and the governmental units included within its boundaries from the preclearance provisions of Section 5, 42 U.S.C. § 1973c.

5.     This three-judge district court is authorized by 28 U.S.C. § 2284 and 42 U.S.C. § 1973b(a)(5) and has jurisdiction over this matter.

6.     Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through a declaratory judgment action in this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) both "during the ten years preceding the filing of the action" and "during the pendency of such action."  42 U.S.C. §1973b(a)(1).  In relevant part, the statutory conditions for bailout in Section 4(a) are:

> (A)  no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section;

2

(B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote;

(C) no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision;

(D) such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment;

(E) the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending; and

(F) such State or political subdivision and all governmental units within its territory - (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to

> eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process.

*See* 42 U.S.C. §§ 1973b(a)(1)(A)-(F).

      7.      Section 4(a) provides the following additional requirements to obtain bailout:

> To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation.
>
> No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated.
>
> The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices .
> . . .

*See* 42 U.S.C. § 1973b(a)(2)-(a)(4).

      8.      Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political

subdivision has complied with the requirements of [Section 4(a)(1)] . . . ." 42 U.S.C. § 1973b(a)(9).

9. The Attorney General hereby advises the Court that he has conducted a comprehensive and independent investigation to determine the eligibility for bailout by Falls Church. In so doing, the Attorney General represents that Department of Justice attorneys interviewed a number of members of the local community and reviewed a substantial quantity of documentary evidence, including: background information, demographic data, submissions under Section 5, and the minutes of the Falls Church City Council and Falls Church Public School Board for the period of the past ten years.

10. The Attorney General and the City of Falls Church agree that the City has fulfilled the conditions required by Section 4(a) and is therefore entitled to the requested declaratory judgment exempting it from Section 5 coverage. Accordingly, the City and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree based on the following agreed findings.

## AGREED FACTUAL FINDINGS

11. The City of Falls Church is an independent city located in the Commonwealth of Virginia and thus a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act. *See* 42 U.S.C. §1973b(a)(1)(A); *see also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 129 S. Ct. 2504 (2009). There is one other elected governmental unit within the meaning of 42 U.S.C. §1973b(a)(1) that exists within the City of Falls Church: the Falls Church City Public School District.

12. Set forth below are the demographics of the City of Falls Church, based on U.S. Census data. Racial categories for 2010 census data are aggregated pursuant to guidance issued

by the Office of Management and Budget, OMB Bulletin 00-02 (Mar. 9, 2000), and the Department of Justice, 76 Fed. Reg. 7470, 7472 (Feb. 9, 2011); 66 Fed. Reg. 5411, 5414 (Jan. 18, 2001).

13. According to the 2010 Census, the City of Falls Church had a total population of 12,332 persons, of whom 9,093 (73.7%) were non-Hispanic white, 580 (4.7%) were non-Hispanic black, 1,109 (9%) were Hispanic, 53 (0.4%) were non-Hispanic American Indian, and 1,409 (11.4%) were non-Hispanic Asian. According to the 2010 Census, the City of Falls Church had a total voting age population of 9,285 persons, of whom 7,009 (75.5%) were non-Hispanic white, 405 (4.4%) were non-Hispanic black, 771 (8.3%) were Hispanic, 41 (0.4%) were non-Hispanic American Indian and 1,003 (10.8%) were non-Hispanic Asian.

14. The Falls Church City Council is the governing body that formulates polices for the administration of government in the City of Falls Church. It is comprised of seven members elected at-large by plurality vote in non-partisan elections. Members of the city council serve four-year staggered terms.

15. Four African American members and one Asian American member have been elected to and served on the Falls Church City Council since the 1990s.

16. The Falls Church City Public School District is coterminous with the City's boundaries. The Falls Church School Board governs the School District. The Falls Church School Board is comprised of seven members elected at-large by plurality vote in nonpartisan elections. Members of the school board serve four-year staggered terms.

17. One African American member and two Hispanic members have been elected to and served on the Falls Church School Board.

18. The City of Falls Church Registrar of Voters and Electoral Board are primarily responsible for all election-related functions for both the City and School District, including the preparation of ballots, voter registration, list maintenance, voter outreach, conduct of elections, and the selection of polling sites and poll workers.

19. Eligible residents of the City of Falls Church may register to vote in-person at the office of the Falls Church Registrar of Voters. Eligible residents may also obtain voter registration applications at the Department of Motor Vehicles offices and other governmental offices. Eligible residents may also obtain an application via the city's website, which provides a link to the downloadable voter registration application available on the State Board of Elections website. Eligible residents may also register to vote by submitting completed voter registration applications by mail. The City also conducts voter registration outreach at the local library and during annual citywide festivals and provides voter registration applications to local nonprofit organizations upon request. Voters can check their voter registration status, their polling place, and the contests that will appear on their ballots, using the State Board of Elections website.

20. The City of Falls Church, like other jurisdictions in the Commonwealth of Virginia, does not record the race of its registered voters, and cannot present direct evidence of minority voter registration or minority participation in voting. Falls Church has presented available information on voter registration and voting participation. Current data show that a significant portion of the voting age population in the city is registered to vote. As of November 6, 2012, the city had 9,403 registered voters or 101.2% of the city's 2010 Census voting age population. The percentage of registered voters has increased significantly over the last decade. In November 2000, there were only 6,529 registered voters in the city, or 82.2% of the city's

2000 Census voting age population. Voter turnout has varied depending upon the offices up for election. For example, in recent November general elections, the percentage of registered voters turning out to vote has been: 66.4% (2006), 26.8% (2007), 80.7% (2008), 51.0% (2009), 51.6% (2010), 30.7% (2011), and 77.9% (2012).

21. On election days, Falls Church uses three polling places, one in each election precinct/ward. In addition, the city operates an in-person absentee voting location at City Hall prior to the election.

22. Of the 179 poll workers identified by Falls Church, four (0.02%) were Black and two (0.01) were Hispanic.

23. The Attorney General has found no evidence of violations of law implicating racial discrimination in voting in the City of Falls Church or the Falls Church School District, nor court decisions that find racial discrimination in voting in those jurisdictions, nor pending court cases alleging such racial discrimination in voting. 42 U.S.C. §§ 1973b(a)(1)(B) and (a)(3).

24. Since January 2003, the Department has received fourteen (14) submissions from or on behalf of the City of Falls Church and the Falls Church School Board. These submissions included changes to in-person absentee and Election Day voting locations, changes to hours and locations for voter registration, use of the e-Slate electronic voting system, the realignment and reduction of voting precincts and polling places, and changes in the municipal election date. The Attorney General has not interposed objections to any changes submitted by the City of Falls Church or the Falls Church School District during the preceding ten years. The City of Falls Church made two submissions after the Attorney General reviewed the records of the Falls

Church City and School District in the course of considering the City's bailout request and advised that it appeared that some potential voting changes had not previously been submitted to the Attorney General over the preceding ten years.  This review also determined that the failure to make such submissions prior to implementation was inadvertent or based on a good faith belief that the changes were not covered by Section 5 and was not the product of any discriminatory reason.  Upon notice from the Attorney General, Falls Church ensured that these matters were promptly submitted for review under Section 5, and the Attorney General interposed no objection to these changes under Section 5.  This Court has granted bailout to a number of other covered jurisdictions who have similarly implemented certain voting changes prior to Section 5 review.  *See, e.g.*, *Shenandoah Cnty. v. Reno*, No. 99-992 (D.D.C. Oct. 15, 1999); *Roanoke Cnty. v. Reno*, No. 00-1949 (D.D.C. Jan. 24, 2001); *Warren Cnty. v. Ashcroft*, No. 02-1736 (D.D.C. Nov. 26, 2002); *Pulaski Cnty. v. Gonzales*, No. 05-1265 (D.D.C. Sept. 27, 2005); *Augusta Cnty. v. Gonzales*, No. 05-1885 (D.D.C. Nov. 30, 2005);  *Jefferson Cnty. Drainage Dist. No. Seven v. Holder*, No. 11-461 (D.D.C. June 6, 2011); *Alta Irrigation Dist. v. Holder*, No. 11-758 (D.D.C. July 15, 2011); *Culpeper Cnty. v. Holder*, No. 11-1477 (D.D.C. Oct. 3, 2011); *King George Cnty. v. Holder*, No.11-02164 (D.D.C. April 5, 2012); *Prince William Cnty. v. Holder,* No. 12-00014 (D.D.C. April 10, 2012); *Merced Cnty. v. Holder*, No. 12-00354 (D.D.C. Aug. 31, 2012); *Browns Valley Irrigation Dist. v. Holder*, No. 12-01597 (D.D.C. Feb. 4, 2013); *New Hampshire* v. *Holder*, No. 12-1854 (D.D.C. March 1, 2013).  Information on bailout cases is available on the Department of Justice's website at www.justice.gov/crt/about/vot/misc/sec_4.php.

25. Falls Church publicized the intended commencement of this action prior to the

filing of the Complaint by placing advertisements in the Falls Church newspaper, on the city's website at www.fallschurchva.gov, and by posting notices at the entrance of all city offices, including the city manager's office, and the Falls Church Health and Human Services office on January 10, 2013.  *See* 42 U.S.C. § 1973b(a)(4).  Falls Church has also publicized notice of this proposed settlement simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree.  42 U.S.C. § 1973b(a)(4).  The parties request that this Court wait thirty (30) days after filing of the Joint Motion for Entry of this Consent Judgment and Decree before approving this settlement, while the notice of proposed settlement is advertised.

26. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the City of Falls Church pursuant to Section 4(a)(9) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(9).  The Attorney General's consent in this action is based upon his own independent factual investigation of the Fall Church City's and School District's fulfillment of all of the bailout criteria and consideration of all of the circumstances of this case, including the views of Falls Church residents and the absence of evidence of racial discrimination in the electoral process.  This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that both the statutory objectives of encouraging Section 5 compliance and of preventing the use of discriminatory voting practices would not be compromised by such consent.

## AGREED FINDINGS ON STATUTORY BAILOT CRITERIA

27. The City of Falls Church and the Falls Church School District are covered jurisdictions subject to the special provisions of the Voting Rights Act, including Section 5 of the

Act, 42 U.S.C. § 1973c.  Under Section 5, the Falls Church City and School District are required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date for the Commonwealth of Virginia.

28. During the ten years preceding the filing of this action and during the pendency of this action, no test or device, as defined in Section 4(c), 42 U.S.C. § 1973b(c) has been used within Falls Church City or School District for the purpose or with the effect of denying or abridging the right to vote on account of race or color.  42 U.S.C. § 1973b(a)(1)(A).

29. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere within the territory of the City of Falls Church.  Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds.  No action is presently pending alleging such denials or abridgements of the right to vote.  *See* 42 U.S.C. § 1973b(a)(1)(B)

30. During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to the City of Falls Church.  *See* 42 U.S.C. § 1973b(a)(1)(C).

31. During the ten years preceding the filing of this action, and during the pendency of this action, Falls Church has submitted fourteen administrative submissions to the Attorney General for review under Section 5.  The Attorney General did not interpose an objection to any of the submissions under Section 5.  As set forth above, Falls Church failed to submit, prior to

implementation, certain changes to the Attorney General for review under Section 5. There is no evidence that Falls Church did not submit those matters prior to implementation for any improper reason. Nor is there any evidence that implementation of such changes, which have now been precleared under Section 5, has had a discriminatory purpose or effect on voting that would contravene Congress' intent in providing the bailout option to jurisdictions such as the City of Falls Church. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for Falls Church City or School District to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objections or denials have occurred. *See* 42 U.S.C. § 1973b(a)(1)(D).

32.   During the ten years preceding the filing of this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by Falls Church City or School District for administrative review under Section 5. No such administrative submissions by Falls Church City or School District are presently pending before the Attorney General. Neither Falls Church City nor the Falls Church School District has sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied Falls Church City or School District a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. *See* 42 U.S.C. § 1973b(a)(1)(E).

33.   During the ten years preceding the filing of this action, and during the pendency of this action, neither Falls Church City nor the Falls Church School District have employed voting procedures or methods of election which inhibit or dilute equal access to the electoral process. 42 U.S.C. § 1973b(a)(1)(F)(i).

34. During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in elections within the City or School District of Falls Church has been subject to intimidation or harassment in the course of exercising his or her rights protected under the Voting Rights Act. *See* 42 U.S.C. § 1973b(a)(1)(F)(ii).

35. Over the preceding ten years, Falls Church has engaged in a variety of constructive efforts aimed at expanded opportunity for convenient registration and voting, such as providing opportunities to register to vote through a variety of offices and through the mail, conducting voter registration outreach at the local library and during annual citywide festivals, providing voter registration applications to local nonprofit organizations upon request, and appointing minority elections officials. 42 U.S.C. § 1973b(a)(1)(F)(iii).

36. Falls Church has presented available information regarding rates of voter registration and voter participation over time. *See* 42 U.S.C. § 1973b(a)(2).

37. During the ten years preceding the filing of this action, and during the pendency of this action, neither Falls Church City nor the Falls Church School District have engaged in violations of any provision of the Constitution or laws of the United States or any provision of state or local laws with respect to discrimination in voting on account of race or color. *See* 42 U.S.C. § 1973b(a)(3).

38. The City of Falls Church publicized the intended commencement of this action prior to the Complaint being filed by publishing notices in the Falls Church newspaper, on the city's website at www.fallschurchva.gov, and by posting notices at the entrance of all city offices, including the city manager's office, and the Falls Church Health and Human Services office on January 10, 2013. Falls Church has publicized a notice of the proposed settlement of this action,

simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree. *See* 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. Plaintiff City of Falls Church is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the City of Falls Church and the Falls Church City Public School District are exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).  This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

3. Each party shall bear its own attorney's fees, expenses and costs.

Entered this _____ day of _____, 2013.

_____
UNITED STATES CIRCUIT JUDGE


_____
UNITED STATES DISTRICT JUDGE


_____
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

City of Falls Church, Virginia

*/s/ J. Gerald Hebert*

_____
J. GERALD HEBERT
D.C. Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, VA  22304
Tel:  (703) 628-4673
hebert@voterlaw.com

JOHN E. FOSTER
City Attorney
300 Park Avenue
Suite 302 East
Falls Church, VA  22046
Tel. (703) 248-5010
jfoster@fallschurchva.gov

*Counsel for Plaintiff*
*City of Falls Church, Virginia*

Dated:  April 25, 2013

        Approved as to form and content:

RONALD C. MACHEN JR.        THOMAS E. PEREZ
United States Attorney        Assistant Attorney General
District of Columbia        Civil Rights Division

        */s/ Jenigh J. Garrett*
        _____
        T. CHRISTIAN HERREN, JR.
        SARABETH DONOVAN
        JENIGH J. GARRETT
        ANGELA J. MILLER
        Attorneys
        Voting Section
        Civil Rights Division
        United States Department of Justice
        950 Pennsylvania Ave., N.W.
        Room 7254 - NWB
        Washington, D.C. 20530
        Tel:  (202) 305-4777
        Fax:  (202) 307-3961
        sarabeth.donovan@usdoj.gov
        jenigh.garrett@usdoj.gov
        angela.miller5@usdoj.gov

        *Counsel for Defendants*
        *Attorney General of the United States, and*
        *Assistant Attorney General,*
        *Civil Rights Division*

Dated:  April 25, 2013